## No. 6600.

SUCCESSION OF HUGH McCLOSKEY.    OPPOSITION OF MRS. ALICE McCLOSKEY.

A donation of future property, contained in a marriage contract, is not a legacy. It is a donation *inter vivos*, and at the death of the donor becomes a debt of his succession.

APPEAL from the Second District Court, parish of Orleans. *Tissot,* J.

*T. Gilmore & Sons,* for the executors and appellees.

*James Timony,* for opponent.

The opinion of the court was delivered by

SPENCER, J. The decedent, Hugh McCloskey, and "Mistress Alice B. Grant," before their marriage, entered into a marriage contract before William J. Castell, Esq., notary public, of which the following is one of the stipulations:

"Fourth—In consideration of the marriage, and of the love and affection which the said future husband bears to his said future wife, he does by these presents donate to his said intended wife the sum of $10,000

(ten thousand dollars), in the event that she should survive him, said sum to be taken from the mass of his succession."

They were married and she survived him.

Is the ten thousand dollars a debt of the succession, or is it a legacy?

The executors say it is a legacy. The opponent says it is a debt of the succession.

The executors contend that this is a donation of future property by marriage contract, and that it is, therefore, testamentary in its character, and to be paid as a legacy and concurrently with other legacies. The opponent contends that it is a donation *inter vivos* of present property, suspended by a condition, and that the condition, to wit : survivorship of donor, having happened, it is a debt of the estate and bears interest from donor's death.

The rules of our Code governing this case are to be found in the general provisions relative to "donations *inter vivos*," and more especially in chapters VIII. and IX. of Title II., Book III., of the Civil Code, entitled, respectively, " Of donations made by marriage contract to the husband or wife and to the children to be born of the marriage," and "Of donations between married persons, either by marriage contract or during the marriage."

We agree with the counsel for the executors that the disposition in question is a " donation of property in future." It is a donation of a " sum to be taken from the mass of his succession," so that the donee has no right which she could enforce during the life of the donor, and a right dependent upon his death and upon his succession. If he died without property, at the time of his death, there was no recourse for her.

But because the donation is " of future property," it does not follow that the donation is testamentary—that it is a legacy.

Donations by marriage contract are not classed by the Code under the title of testaments. They are not subject to the forms prescribed for any kind of testament, but simply required to be passed before a notary and two witnesses, like other donations, O. C. C., 2308. Article 1738, O. C. C., declares that, " A donation of property in future * * * made between married persons by marriage contract, * * * shall be subject to the rules established by the preceding chapter (VIII.) with regard to similar donations made to them by a third person," etc. The rules established and referred to are found in acticle 1728, O. C. C. This article of our Code corresponds to article 1082 of Code Napoléon. Commenting on the articles of this chapter (VIII.), Mercadé, vol. 4, p. 210, says :

" On a vu sous l'acte 893, No. 11, que, malgré l'opinion contraire de Merlin et de Toulin, il n'existe plus, sous le Code, de donations à cause de mort; et que les libéralités exceptionnelles dont s'occupent notre chapitre

et le chapitre suivant ne sont toujours que des donations entre-vifs, qui restent soumises aux règles ordinaires pour tous les cas qui ne sont pas l'objet d'une dérogation formelle."

Again he says, commenting on article 1082, C. N., (corresponding to 1728 aforesaid) :

"Aujourd'hui, comme le prouvent et l'article 893 et la subrique de notre chapitre, et les articles 1082, 1083, 1089, ce n'est plus là qu'une donation entre-vifs, *une donation de biens à venir;* et c'est par les règles générales des donations, non par celles des successions ou des testaments, qu'il faudra suppléer aux règles spéciales de cette manière de disposer." Vol. 4, p. 212.

We accept these views as being the true exposition of the law, and as in consonance with the provisions of our Code. We have examined with care the cases in our own courts referred to by the counsel of executors, and we find nothing in them to change our views of the provisions of our Code, under which we think the ancient "*institution* contractuelle" no longer exists.

In Fowler vs. Boyd, 15 L., 562, this court held that a universal donee under a marriage contract, like a universal legatee under a will, is by mere operation of law seized of the whole estate, in the absence of forced heirs, and no demand of possession is necessary of the heirs at law.

In Criswell vs. Seay et als., 19 L., 528, where the husband, having then living two children of previous marriage, makes, in his marriage contract, a donation to his future wife, of " all the property of whatsoever kind and description he may die possessed of, and which may lawfully be given by act of donation according to the laws of Louisiana ; that is to say, of all his property that he may die possessed of, and which he is or may be entitled by law to dispose of *mortis causa,* and which portion will be determined by the number of heirs that he may leave at his decease." It was held by this court that the two children, his only forced heirs, having died before him, his surviving wife became his universal donee and entitled to his entire estate.    That the capacity to make such a disposition, as to its amount, must be determined by reference to the time of the donor's death, because it is not till then that the donation is to take effect.  True, the court arrives at this last conclusion by deducing it from the rules of our law in reference to testamentary dispositions, and says that it is a donation *causa mortis.*  But we do not see that this is to say that it is a *testamentary disposition.*  On the contrary, we think it is not.  It is undoubtedly a donation to take effect on the death of donor.  It is a contract, an *irrevocable act,* depending upon the happening of a future event, to wit: the predecease of the donor ; and while possessing some features resembling in their effects testamentary dispositions, yet clearly distinguishable from them.

We, therefore, conclude that the disposition in question is a donation *inter vivos*, taking effect at the death of the donor. That the donee is not a legatee, but a creditor of the estate, and as such entitled to be paid by preference to the legatees, and with legal interest from the death of the donor, Hugh McCloskey.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended, and it is now ordered and decreed that there be judgment sustaining the opposition of Mrs. Alice McCloskey to the fifth provisional account of the executors, and that she be placed thereon as a creditor for ten thousand dollars, with five per cent interest to date from death of Hugh McCloskey, and that she be paid by preference to the legatees of said decedent, and that in other respects said account be homologated. It is further ordered, that the executors pay costs of both courts.

---

### On Application for Rehearing.

The opinion of the court was delivered by

Spencer, J. A donation by the husband to the wife, by marriage contract, of future property, leaves the husband the right to sell or mortgage the property so given, " unless he has formally barred himself of it in whole or in part." O. C. C., 1729.

If in express terms he " bars himself " from selling or mortgaging the thing given, it differs from an ordinary donation only in this that it depends upon the survivorship of the donee, and the donor is not disseized of the property immediately. The mere fact that the donation made without such bar to alienation, leaves the donor free to sell or mortgage, does not prevent its *creating an obligation on him*. An ordinary donation of a sum of money, payable on a future day or on the happening of a future event, does not prevent the donor from selling or mortgaging his property, but it does certainly create a debt against him.

So in this case the donation by Hugh McCloskey of ten thousand dollars, payable out of his succession, to his wife, though not preventing him from selling or mortgaging his property (because he did not thus bar himself), created an *irrevocable obligation* on him during his life, and on his estate after his death. So binding is this obligation that article 1729, O. C. C., forbids him to dispose of his property to her prejudice " by gratuitous title." Yet we are asked in this case to permit him to do what the law says he can not do. We are asked to give effect to his will a *subsequent " gratuitous title "* to the prejudice of this donation; to allow him to dispose " on gratuitous title " of the thing previously given by marriage contract—which the law says explicitly he can not do.

Succession of McCloskey.

This donation must be preferred to the legacies, or else we must expunge article 1729 from the Code.

We therefore adhere to our previous opinion that the donation in this case created *an obligation*, a debt, due at the death of Hugh McCloskey, and that under the general law it bears five per cent interest from the time it was due. It is concededly not a legacy, and, so far as we can see, has none of the effects of a legacy, except that it is payable after death of the donor out of his succession. It certainly is payable in preference to legacies, which are subsequent "*gratuitous dispositions.*" We are not called upon to decide whether it would be liable to reduction or defeat by debts of the donor. Perhaps such debts would have a preference over the donation, but that does not prevent the donation having a preference over the legacies.

The rehearing is refused.