REGAN, Judge.
This is an appeal from a judgment which amended an inventory, taken for the purpose of effecting a partition of community property, homologated the inventory as amended, and ordered the partition of the community property.
Defendant, Rodney Fertel, has appealed, asserting that the trial judge erred in four respects. His wife, Ruth Udstad Fertel, the plaintiff herein, has neither appealed nor answered the appeal.
The record reveals that plaintiff and defendant were married in 1947 and they lived' together continuously thereafter until the defendant abandoned the matrimonial domicile eleven years later.
On October 7, 1958, plaintiff obtained a-, judgment of separation a mensa et thoro' against the defendant on the grounds of' abandonment. Thereafter, she petitioned the court to order an inventory of the community assets in order to effect a partition' thereof.
When the marriage occurred, Rodney-Fertel owned revenue producing properties-which, during the existence of the marriage, produced all of the community earnings.
Predicated primarily on the fact that the separate estate of the defendant, Rodney-Fertel, produced almost all of the community earnings, he is contesting the homol-ogation of the inventory. For the purpose-of clarity, we shall consider each of his complaints separately.
Defendant first asserts that the residence located in 1247 Seville Drive, which the court decided was a community asset, is his separate property.
The record reveals that Fertel purchasedthis property in 1955 for a cash consideration of $40,000, $11,000 of which he paid out *855 •of income derived from rental property. He obtained the balance of $29,000 from his mother, Mrs. Annie Buhberg, who was given a $29,000 promissory note and a mortgage on property in 1019-29 Canal Street to secure repayment of this loan. The property mortgaged belonged to the separate estate of Rodney Fertel.
Between 1955 and 1957, Mrs. Buhberg received monthly payments on account of this indebtedness which totaled more than $7,-000, as is evidenced by cancelled checks payable to the mortgagee and signed by the plaintiff, who it is conceded made most of the disbursements for the community, in addition to collecting the rent emanating from defendant’s separate property when he was absent from the city. Further, plaintiff introduced in evidence a check in the amount of $7,000, dated October 29, 1957, payable to Mrs. Buhberg and signed by the plaintiff wife. There is a notation ■inscribed on the back of the check, to the effect that the amount thereof was accepted in full satisfaction of the loan for the purchase of the Seville Drive property.
Although Mrs. Buhberg endorsed and negotiated this check, she testified that she was not in fact repaid in full and that it was her intention at the time to donate the unpaid balance of the note to her son.
While there is no evidence in the record .to prove that the entire balance of the promissory note was paid by the Fertels, it does disclose that Mrs. Buhberg frequently borrowed funds from her son, and he, in turn, borrowed money from’ his mother. Although several sizable checks were produced reflecting business transactions between mother and son, both were unable to explain why they were issued, excusing this failure by stating they were not “good with figures”.
The record also reflects that despite the close relationship between mother and son, their business dealings with each other were conducted as though they were strangers. This is evidenced by the fact that Mrs. Buhberg sued her son for $23,000, obtained a judgment therefor, and was fully repaid. Although this was a separate debt of defendant, his mother was repaid out of funds earned by the community.
Predicated on the foregoing facts, the trial judge concluded that the Seville Drive property was a community asset, and we find no error in this conclusion.
It is a well settled principle of law that property acquired during the existence of the community is presumed to be community property, and will not be deemed otherwise unless the spouse, who contends it is separate property, introduces evidence to rebut the foregoing presumption. It is equally well-settled that earnings from either spouse’s separate and paraphernal property falls into the community of acquets and gains during the existence of the marriage.
Applying these principles to the instant case, the Seville property, which was acquired during the marriage, is presumed to be community. There is positive evidence to the effect that more than $25,000 of the $40,000 purchase price was paid with community earnings, namely, rents from defendant’s separate property.
To rebut the presumption of community, the defendant’s mother was called as a witness to testify that she intended to donate some $15,000 to her son. We do not think that her testimony is sufficient to rebut the presumption in view of the fact that she negotiated a check for $7,000, which was accepted in full payment for the mortgage loan and, further, that her past conduct reflected that she dealt with her son on a businesslike basis when matters pertaining to finances were involved.
Counsel for defendant also argues that despite the fact that the Seville Drive property was purchased with community funds, defendant’s separate estate should be reimbursed for the rentals derived from defendant’s separate property that were used to pay for the residence. He asserts this contention is supported by the rationale *856 emanating from the Succession of Hemen-way.[1]
We are of the opinion that the foregoing case is not apposite since the court therein reasoned that the community is indebted to the separate estate when separate funds are used to enhance the value of the community. In the matter now before us, cormmmity earnings derived from separate property were used to purchase the house on Seville Drive.
Defendant secondly contends that the trial judge erred in assigning a value of $4,000 to four race horses which defendant caused to be sold at public auction for $4.00.
The record reflects that in August 1958, defendant obtained a court order to sell four race horses, which belonged to the community, at public auction to the highest bidder. In pursuance thereof, defendant shipped the horses from a race track in Detroit to Lexington, Kentucky. On Friday, August 17, 1958, defendant inserted an advertisement in a Lexington newspaper announcing that the horses would be sold on August 19, 1958, a Sunday, at a public auction to be held on the steps of the county courthouse.
The auction was conducted by Bruce Wilson, a resident of Ohio, who had obtained an auctioneer’s license from the city of Lexington several days prior thereto. The only persons present when the sale occurred were the auctioneer, the defendant, and Walter Rydesky, who purchased all four horses for $4.00. At the time of the sale he was employed by the defendant.
Rydesky, who appeared as a witness for the defendant, conceded that the value of all four horses on the date of the sale was $2,600, which apparently was an extremely conservative estimate. He also testified that two months after the sale, Speedy Jane, one of the horses purchased, won a $4,000 purse at Keeneland race track in Kentucky.
Several horse trainers appeared therein to testify as to the value of these horses, and although they could not assign a value to them on the day the auction was held, they were of the opinion that these horses were worth between $3,200 and $5,000 a short time before or after the sale.
Although counsel for the defendant strenuously asserts that $4 was a valid consideration, we can only infer from the foregoing facts that the defendant conducted a sham sale in order to remove these assets from the community, and that he, in effect, still retains control of the horses, since they were purchased by one of his employees.
Defendant next asserts that all the movables enumerated in the inventory, which were acquired during the marriage, are his separate property in view of the fact that they were bought with earnings from his separate estate. For the reasons set forth hereinabove in discussing his claim to the Seville Drive property, this contention obviously has no merit.
Finally, defendant contends that the trial court erred in concluding that plaintiff owned an undivided one half interest in property located in Canal and Front Streets; and in declaring this to be plaintiff’s separate property by virtue of an act of donation from her husband; and, lastly, in refusing to revoke the donation despite the fact that plaintiff was guilty of ingratitude.
The record reflects that Rodney Fertel had purchased this property prior to his marriage; however, in 1952, he donated to his -wife an undivided one half interest therein. In 1953, Ruth Fertel reconveyed by donation this same interest back to her husband.
When the original inventory was made, the Canal Street property was not included; however, plaintiff caused a supplemental inventory to be taken, which designated this property as an asset subject to the partition.
*857 Defendant opposed inclusion thereof and asserted full ownership by virtue of a donation wherein his wife reconveyed her interest in this property to him in 1953. In the alternative, should this donation be stricken with nullity, defendant, assuming the position of plaintiff in reconvention, brought an action to revoke the 1952 donation of this interest to his wife on the ground that she had been guilty of ingratitude and cruel treatment.
 In view of the fact that Ruth Fer-tel obtained the judgment of separation, the trial court properly pronounced that her donation to her husband was a nullity, by virtue of the provisions of LSA-C.C. Art. 156,[2] which reads:
“In case of separation from bed and board, the party against whom it shall have been pronounced, shall lose all the advantages or donations, the other party may have conferred by the marriage contract or since, and the party at whose instance the separation has been obtained, shall preserve all those to which such party would have been entitled; and these dispositions are to take place even in case the advantages and donations were reciprocally made.”
Defendant, however, asserts that the 1952 donation he made to his wife is subject to revocation under the provisions of LSA-C.C. Art. 1560, which provides, in part:
“Revocation on account of ingratitude can take place only in the three following caces:
* * * * * *
“2. If he has been guilty towards him of cruel treatment, crimes or grievous injuries;”
Defendant insists that his wife was guilty of cruel treatment in committing adultery during the marriage and after the separation and in encouraging her paramour to assault the defendant.
The record completely fails to support defendant’s charge of adultery and establishes that the other actions which he alleges constitute cruel treatment were precipitated by his own conduct, and they occurred after the rendition of the judgment of separation.
We are therefore of the opinion that the trial court properly dismissed defendant’s action to revoke the donation and recognized plaintiff’s one-half interest in the Canal Street property as her separate and paraphernal property.
The trial court, very properly, did not order this land sold in the partition of the community since, in this instance, plaintiff and defendant are co-owners in indivisión of an undivided one half interest each, and this interest, in both cases, is separate property.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. 228 La. 572, 83 So.2d 377.

. See also Thigpen v. Thigpen, 231 La. 206, 91 So.2d 12,