409 So.2d 282 (1981)
Michael G. VAUGHN
v.
Allen Dennis COCO, et ux.
No. 14398.
Court of Appeal of Louisiana, First Circuit.
November 23, 1981.
Rehearing Denied February 2, 1982.
*283 Walton J. Barnes, III, Zachary, for plaintiff-appellant Michael G. Vaughn.
Jerry H. Bankston, Baton Rouge, for defendant-appellee Allen Dennis Coco and Brenda Daigrepont Coco.
James L. Dendy, Ltd., Baton Rouge, for third party defendant-appellee Alice Faye Vaughn Donaldson.
Before COVINGTON, COLE and WATKINS, JJ.
COLE, Judge.
The issue presented is whether Louisiana Civil Code article 156 is self-operative or whether one must file an action to invoke it.[1] The facts giving rise to this litigation are as follows:
Alice Faye Purvis Kelley purchased Lot 181, Oak Manor Subdivision, in East Baton Rouge parish, from John B. Freedman on February 26, 1973. At that time Ms. Kelley was not married. She subsequently married Michael G. Vaughn on November 16, 1973, and on April 4, 1974, Mrs. Vaughn executed an act of donation whereby she donated an undivided one-half interest in the property to her husband, Michael G. Vaughn. All acts affecting the real estate were properly recorded.
On November 10, 1975, the couple separated and on December 15, 1975, Michael G. Vaughn filed suit in the Family Court for the Parish of East Baton Rouge, seeking a separation from his wife. She answered and reconvened, seeking a divorce on the grounds of his adultery. She was granted the divorce on March 19, 1976. That same day the couple entered a property settlement *284 wherein Mrs. Vaughn was given ownership of the disputed real estate.
Several months later Mr. Vaughn filed suit to rescind the property settlement agreement, alleging lesion beyond moiety. On November 3,1976, he filed a notice of lis pendens in the mortgage records of East Baton Rouge Parish, showing the property was in litigation. On February 25, 1977, Mrs. Vaughn conveyed the property to Allen Dennis Coco and Brenda Daigrepont Coco for the sum of $31,500.00. In September of 1979 judgment was rendered in the lesion suit, declaring the property settlement to be null and void, thereby returning the parties to the status quo as to the ownership of the community property.
Thereafter, Michael G. Vaughn filed the present suit against the Cocos, seeking to recover one-half the price of the disputed property or alternatively, to be declared owner of one-half of the property. He contended that because the property settlement had been annulled, he and his ex-wife were co-owners in indivision of the disputed property, therefore he was entitled to one-half the value.
The Cocos filed a third party suit against Mrs. Vaughn (now Donaldson), alleging she had breached her warranty of title. Both the Cocos and Mrs. Vaughn filed a motion for summary judgment, alleging there was no genuine issue of material fact as to the nature of the property and as to Mrs. Vaughn's right to sell the property. The Cocos included as exhibits various affidavits, a copy of the sale whereby Mrs. Vaughn (then Kelley) purchased the property and a copy of the act of donation.
The trial court granted the summary judgment in favor of the Cocos,[2] based on its reasoning that because La.Civ.Code art. 156 is self-operative, the donation was revoked when Mrs. Vaughn obtained the judgment of divorce and the property automatically reverted back to its original status, i.e., it became the separate property of Mrs. Vaughn. She therefore had complete freedom to sell the property if she so desired, the court concluded. Mr. Vaughn has appealed.
We find no error in the reasoning of the trial court. Extensive research has revealed the situation presented here is not one often litigated. We have found only two cases which deal with this issue. The first is Thigpen v. Thigpen, 231 La. 206, 91 So.2d 12 (La.1956). In that case the husband (the successful party in the separation suit) had bought a diamond ring and given it to his wife. The ring was bought with presumed community funds and the wife argued the donation to her made the ring her separate property. The court agreed with the husband's contention that although he had donated the ring to his wife, the judgment of separation from bed and board in his favor effected a revocation of the gift, citing La.Civ.Code art. 156. Therefore the ring returned to its original status of community property, with each having an undivided one-half interest. The court stated: "[T]he effect of the decree of separation requires that the ring be considered as part of the common property and not as separate property." (Emphasis supplied.)
The second case is Fertel v. Fertel, 148 So.2d 853 (La.App. 4th Cir. 1962), writ refused 244 La. 133,150 So.2d 589. In Fertel, the husband had purchased certain real estate prior to his marriage and then donated an undivided one-half interest to his wife. Later during the marriage the wife reconveyed her interest back to her husband by an act of donation. The marriage faltered and the wife obtained a judgment of separation. The husband contended that because of his wife's donation to him the property, in full ownership, was again his separate property. The court held: "In view of the fact that Ruth Fertel obtained the judgment of separation, the trial court properly pronounced that her donation to her husband was a nullity, by virtue of the provisions of LSA-C.C. Art. 156....." *285 (Emphasis supplied.) The wife's one-half interest in the property, as her separate and paraphernal property, was recognized, the remaining one-half interest being the separate property of the husband.
In both cases the court treated article 156 as self-operative, i.e., the parties did not need to file a separate suit to have the donation revoked. We find no error in the trial court doing the same here. In fact, a historical examination reveals that Planiol considered the French equivalent to article 156 (article 299 of the Code Napoleon) to also be self-operative. In his civil law treatise, he discussed donations between spouses and noted that these donations were subject to various methods of revocation. He stated as follows:
"Moreover, the same conclusion follows from Art. 299, which declares a donation rescinded automatically against the spouse adjudged guilty in an action for divorce or separation." (Emphasis added.) 3 Planiol, Traite EelEementaire de droit civil no 3217 (11th ed. 1939).
Article 299 of the Code Napoleon is very similar to our article 156 in that it states in part, "... the married party against whom the divorce shall have been established shall lose all the advantage conferred by the other party, whether by their contract of marriage, or since the marriage was contracted." We note although the French article, like our own, does not specifically state the loss of the donation shall be automatic, Planiol, like the courts cited in the two cases above, interpreted it to mean such.[3]
Since article 156 is self-operative, the donation in the instant case was automatically revoked when Mrs. Vaughn obtained the judgment of divorce. We note article 156 speaks of a separation, rather than of a divorce, but article 159[4] states the effects of divorce are the same as those of separation. Therefore, at the time Mrs. Vaughn sold the property, it was her separate property and Mr. Vaughn had no claim to it.
The fact that the couple included the property in the community property settlement has no effect on our decision. The status of the property is controlled by the various articles of our Civil Code, not by what the parties choose to call it. The property settlement was executed after the judgment of divorce was rendered, therefore, at that moment the real estate was the separate property of Mrs. Vaughn. The property should not have been included in the settlement as community property. Likewise, the fact that the property settlement was declared null in the rescission suit has no effect on the issue here. It simply means that the parties were returned to their status quo as to the community property. The real estate, not being a part of the community, was not affected by the rescission.
We find no merit to appellant's argument that this revocation has prescribed under La.Civ.Code art. 1561. That article states that when the cause of the revocation is ingratitude of the donee the suit must be brought within one year from the day of the act of ingratitude. We agree with the trial court that the cause of this revocation is not ingratitude. To the contrary, the basis for this revocation can be characterized by art. 1559(4),[5] which is "The legal or *286 conventional return." As the trial court stated in oral reasons, "... the legal or conventional return is what is covered under article 156 and its corresponding divorce provisions under article 159 of the civil code."
For the foregoing reasons, the judgment of the trial court is affirmed. Appellant is to pay all costs.
AFFIRMED.
 APPENDIX
 * SUIT NUMBER 238,392,
MICHAEL G. VAUGHN * DIVISION M
VERSUS * 19TH JUDICIAL DISTRICT
ALLEN DENNIS COCO, * COURT PARISH
ET UX * OF EAST BATON ROUGE
 * STATE OF LOUISIANA
* * * * * * * * * * * * * * * * * * *

ORAL REASONS FOR JUDGMENT

THE HONORABLE CHARLES WILLIAM ROBERTS, JUDGE PRESIDING

FRIDAY, DECEMBER 19, 1980
It is this Court's belief that the disposition of this matter should actually be made on the basis of the public records doctrine, if you will. The facts are, as shown by the documents attached to the motions, thatand I will call them by first nameAlice acquired the real estate when she was single, then she married Michael Vaughn, the plaintiff in this suit, and purported to donate to him a one-half interest. In that act, she says that it is her intention to convert the title to the property from her separate and paraphernal estate into the community of acquets and gains, but the road to many a place is paved with good intentions. I do not believe that you can convert an act into something of your intention merely by saying so when you have, in fact, made a specific thing. In this case, she made a specific donation of a one-half interest of her separate property to her then husband on the basis of the love and affection for that husband. I frankly don't think it would make any difference that the additional words were added.
Then Alice and Michael disagreed and Michael filed a suit for separation in Family Court of this parish in suit Number 34,785. Alice reconvened for a divorce on the grounds of adultery.
I do not know what agreements were made, or anything else. I can only go by the record, and the record shows that the matter came up before the Family Court pursuant to previous assignment. After hearing the evidence and argument of counsel, the Court granted the judgment on the reconventional demand, that is, granted a judgment of absolute divorce in favor of Alice and against Michael Vaughn, which had to be on the grounds alleged in the petition, that is, adultery.
Then the parties entered into a purported community property settlement in which Alice received the real estate involved in this lawsuit and some other items, and Michael received certain items. Then Michael filed suit Number 192,782 on the docket of this Court seeking to set aside that community property settlement on the ground of lesion beyond moiety and the judge of the division that heard the matter, on a stipulation of fact of what evidence would be submitted, granted judgment setting aside the community property settlement, but at no time is there any mention in that suit of the possible effects of Articles 156 and 159 of the Civil Code, nor is there any stipulation, even if it could be considered an estoppel, by Alice that the real estate was community real estate. The only stipulation was the value of the property and that she had received it in the alleged community property settlement. Now, it may well have been at that time that, considering separate property and community property, the parties gave up claims made as to payments on the mortgage or this, that, or the other, in their purported settlement. But the only stipulation in that case by Alice, which this Court can find, is the value of the property, not a stipulation that it was actually community, and I don't know that she could by stipulation change what the law says it is.
*287 Now, going to the other arguments, counsel for plaintiff in this case has referred to Article 1559 of the Civil Code about the revocation of donations inter vivos and refers to only subparagraph one, that is, the ingratitude of the donee, which may have been the issue presented in the "Dimattia" case which is reported at 282 So.2d 554; however, he overlooks the fourth subparagraph of that section, of that article, Article 1559, which deals with the legal or conventional return. This Court believes that the legal or conventional return is what is covered under Article 156 and its corresponding divorce provisions under Article 159 of the Civil Code.
Accordingly, this Court believes and holds that Article 1559(1) is not applicable to the present case, that the one-year prescription in Article 1561 of the Civil Code is not applicable, that the provision that that can only be sued for by that donor is also not applicable, and that what we have before the Court is the effect of Article 156 and 159.
It is true that Michael Vaughn, in his suit on lesion beyond moiety, had filed a lis pendens, but to this Court, that has absolutely nothing to do with whether or not Alice could convey valid title, because even though the suit for lesion was-the decision in the suit for lesion was in favor of Michael Vaughn, it still has nothing to do with whether or not the property involved was the separate property of Alice or whether it was community property, and it wasn't even presented to the judge in the lesion suit. Now, you could go to, if you wanted, Articles 3542 and 2221 dealing with actions of nullity, or rescission of contracts which are five years and ten years under those articles, but that's not really relevant in the present instance.
The only problem this Court has right now is whether or not Article 156 is self-operative; in other words, whether or not it is an absolute nullity or a relative nullity. This Court could find no cases other than those previously cited, and the primary case being that of "Fertel v. Fertel" which was reported, I believe, at 148 So.2d 853, a Fourth Circuit decision, but in which writs were denied. Now, I am aware that the denial of writs does not necessarily mean that that is the law. It merely means that the Supreme Court did not believe that it should consider that particular case at that time. But Fertel did hold that a donation which had been made by one party to the marriage to the other party was revoked by virtue of the divorce being granted against the party to whom the donation had been made. Now, Article 156 specifically provides:
"In case of separation from bed and board, the party against whom it shall have been pronounced, shall lose all the advantages or donations, the other party may have conferred by the marriage contract or since..."
And then, Article 159 says:
"The effects of a divorce shall not only be the same as are determined in the case of separation from bed and board, but it shall also dissolve forever the bonds of matrimony..."
So that applying those two articles and considering Fertel, any party looking at the public records, as of the time that Alice sold the property to the Cocos, would be entitled to consider the property as being the separate property of Alice, that the divorce had been granted in favor of Alice against Michael, on the grounds of adultery, and that therefore the donation which Alice had made to Michael was absolutely set aside, without the necessity of any suit for revocation.
That is the ruling of this Court. Now, an appellate court may disagree and say that it is not self-operative, but the only decisions which I have been able to find today indicate that it is.
The plaintiff, Michael, could have and still has the right to file suit against Alice for an accounting and for a partition of community property. But on the basis of Civil Code Articles 156 and 159, this piece of real estate, once the divorce was granted, was separate property of Alice and her conveyance to the Cocos was, as far as the public records are concerned, perfectly valid, *288 and Michael has no claim as against the Cocos. For that reason, the motion for summary judgment filed by the defendants is granted; inasmuch as that motion is granted, there is no need to consider the motion on the third-party demand because it would fall by virtue of the first decision. And, there is also no need to assign any motion for summary judgment that you had filed, Mr. Barnes.
Judgment will be signed, accordingly, Mr. Bankston, if you will prepare and submit it, but submit it to all counsel for approval as to form, and then Mr. Barnes can proceed.
NOTES
[1] Article 156 provides:

"In case of separation from bed and board, the party against whom it shall have been pronounced, shall lose all the advantages or donations, the other party may have conferred by the marriage contract or since, and the party at whose instance the separation has been obtained, shall preserve all those to which such party would have been entitled; and these dispositions are to take place even in case the advantages and donations were reciprocally made."
[2] The court stated that since it was dismissing the suit as to the Cocos there was no reason to consider the motion for summary judgment filed by Mrs. Vaughn. The well-reasoned opinion of the trial judge is annexed as an appendix.
[3] At one time, under article 1749 of the Civil Code, inter vivos donations between spouses were always revocable. Act 187 of 1942 (R.S. 9:2351 et seq.) repealed article 1749, providing such donations to be as irrevocable as if made to a stranger. The Act, however, also provided that it shall not be construed to modify in any way the provisions of article 156.
[4] Article 159 reads in pertinent part as follows:

"The effects of a divorce shall not only be the same as are determined in the case of a separation from bed and board, but it shall also dissolve forever the bonds of matrimony, between the parties, and place them in the same situation with respect to each other as if no marriage had ever been contracted between them."
[5] Art. 1559 reads as follows:

"Donation [Donations] inter vivos are liable to be revoked or dissolved on account of the following causes:
1. The ingratitude of the donee;
2. The non-fulfillment of the eventual conditions, which suspend their consummation;
3. The non-performance of the conditions imposed on the donee;
4. The legal or conventional return.