535 So.2d 369 (1988)
SUCCESSION OF Alfred Jay MORAN.
No. 88-C-0874.
Supreme Court of Louisiana.
December 12, 1988.
*370 Mack Barham, Robert Arceneaux, Gail Wise, Barham & Churchill, New Orleans, for applicant.
John Wogan, James Dalferes, Monroe & Lemann, New Orleans, for co-applicant.
A.D. Freeman, Jr., Satterlee, Mestayer & Freeman, New Orleans, for respondent.
WATSON, Justice.
Plaintiff, Mrs. Murray Hurley,[1] has intervened in the Succession of Alfred Jay Moran,[2] claiming rights under a marriage contract with the decedent signed shortly before their marriage on February 1, 1980.

FACTS
According to the trial court's reasons for judgment, plaintiff and Moran separated on October 12, 1981. Decedent, Alfred Jay Moran, filed suit for divorce on February 2, 1982, and received a judgment on February 3, 1983. The basis for the judgment is not in the record, but counsel for plaintiff submits that both parties were decreed free from fault.[3]
At issue is Paragraph IX[4] of the marriage contract which reads as follows:
"Husband hereby binds and obligates himself to make a will in which he will leave to Wife the entire disposable portion of his estate, as well as a usufruct to her for her lifetime on the remainder of both his separate and community property, and agrees not to alter or amend such provision by any codicil or will and shall *371 incorporate the agreement contained in this paragraph in any new will or wills subsequently made by him."
Moran apparently never carried out the marriage contract by making a will in favor of his wife. Prior to the marriage, he had made a last will and testament dated December 14, 1979. Subsequently, he executed codicils on August 26, 1980; May 11, 1984; May 14, 1984; and May 17, 1984, none of which mentioned plaintiff. After Moran's death on June 8, 1984, the testament and codicils were probated. Plaintiff's action to annul the probate was dismissed, and the dismissal was affirmed.[5]
Subsequently, plaintiff filed this petition to assert a claim as a creditor of the succession. The trial court maintained exceptions of no right and no cause of action and dismissed plaintiff's suit.
The court of appeal reversed and remanded for trial,[6] relying on LSA-C.C. art. 1888 which stated in 1980 when the antenuptial contract was confected that:
"A future succession may become the object of an antenuptial agreement."
The court of appeal held that Moran's promise not to change his will was against public policy but his promise to leave the disposable portion of his estate was valid. A writ was granted to review the judgment of the court of appeal. 525 So.2d 1049 (La.1988).

LAW
A marriage contract is only valid as to matters not prohibited by public policy. LSA-C.C. art. 2329.[7] Since a testator cannot renounce the right to revoke a will,[8] a testamentary gratuity to a spouse is always precarious, being revocable at will.[9]
Spouses are bound to the terms of their marriage contract only for the duration of the marriage, and testaments made after dissolution of the marriage are not affected.[10] After a divorce, a marriage contract is void and has no future effect.[11]
In general, an inter vivos donation comprehends only the present property of the donor.[12] An inter vivos donation of future property is null. However, the prohibition against an inter vivos donation of future property does not apply to antenuptial marriage contracts.[13] "To give and yet to retain is not valid outside of marriage."[14] Potestative donative conditions are also allowed *372 in marriage contracts. LSA-C.C. art. 1529;[15] LSA-C.C. art. 1532.[16]
The succession of a living person may not be the object of a contract other than an antenuptial agreement. LSA-C.C. art. 1976.[17] The only exception to the general prohibition against contracts about successions of living persons is the right to donate a future succession interest in an antenuptial marriage contract.[18] A donation by marriage contract can include property to be left on the day of decease. LSA-C.C. art. 1735;[19] LSA-C.C. art. 1745.[20] However, an inter vivos donation by an antenuptial marriage contract,[21] stipulated to take effect at the donor's death, is irrevocable only to a limited extent.[22] The donor cannot thereafter dispose of the donation by a gratuitous act. LSA-C.C. art. 1736.[23] Compare LSA-C.C. art. 1468.[24]
LSA-C.C. art. 156,[25] in conjunction with *373 LSA-C.C. art. 159,[26] deals with the loss of advantages or donations conferred by a marriage contract after a separation or divorce. According to these articles, the party against whom a separation or divorce is pronounced loses the advantages or donations conferred by the marriage contract.
The effect of C.C. art. 156, which is adopted by reference in C.C. art. 159, is discussed in Vaughn v. Coco, 409 So.2d 282 (La.App. 1 Cir.1981). In Vaughn, Judge Cole[27] noted that Article 156, which corresponds to Article 299 in the Code Napoleon, has been treated as self-operative[28] in accord with Planiol's interpretation of the French article. However, Vaughn dealt with a "guilty" spouse. Articles 156 and 159 preceded the concepts of no fault or mutual fault divorces first introduced by Act 269 of 1916.[29]
In Parquin v. Finch, 1 Mart.N.S. 465 (1823) the marriage contract stipulated that, absent issue of the marriage, the survivor would inherit the community. The provision was decreed valid, allowing the surviving husband to inherit.
Succession of McCloskey, 29 La.Ann. 237 (1877) decided that an inter vivos donation of future property in a marriage contract made the surviving wife a creditor of the estate. McCloskey distinguished a donation to take effect on the death of the donor from a testamentary disposition. The donee was held to be a creditor of the estate rather than a legatee.
Succession of Cunningham, 142 La. 701, 77 So. 506 (1918) held that a judgment of divorce in favor of a wife did not revoke a testamentary disposition to "my Dear Wife,"[30] when the testament had not been revoked.
In Riddell v. Riddell, 146 La. 37, 83 So. 369 (1919), the marriage contract stipulated that the wife would inherit one-half of the husband's estate if the parties remained married at the husband's death. The widow was allowed to annul a subsequent donation to her husband's son insofar as it impinged on the prior "irrevocable" donation. Riddell relied on LSA-C.C. art. 1736. Since the donation to the son was gratuitous, the widow was allowed to enforce the conditional donation to her in the marriage contract.
Thigpen v. Thigpen, 231 La. 206, 91 So. 2d 12 (1956) allowed a husband who had secured a divorce on the ground of abandonment to revoke the donation of a diamond ring to his wife because she had lost that advantage of marriage by the divorce decree against her. Since the ring had been donated during the marriage, it was held to be community property.
Robinson v. Robinson, 524 So.2d 218 (La.App. 3 Cir.1988) writ denied 531 So.2d 480 (La.1988) concluded that, where there is mutual fault, all donations or advantages *374 conferred by the marriage are revoked by operation of law, because a party must be free from fault to retain any advantage from a marriage.

CONCLUSION
When Alfred Jay Moran received a judgment of divorce, the bonds of matrimony between the parties were dissolved and they were placed "in the same situation with respect to each other as if no marriage had ever been contracted between them". Under Articles 156 and 159, the party against whom the divorce was pronounced lost all the advantages "conferred by the marriage contract." Even if those articles apply in a no fault divorce, the advantages and donations referred to would be those conferred prior to the divorce, those in effect when the marriage was dissolved.
Moran's promise not to revoke or amend a will in his wife's favor was a potestative condition, which he could alter by his unilateral act.
Strong public policy considerations militate against contracting with regard to the succession of a living person and in favor of a testator having the power to revoke his will. The sole exception to both rules has been an inter vivos donation of future succession rights to a prospective spouse by an antenuptial marriage contract. The importance of marriage and the family unit justify this narrow exception, but it cannot be extended to the present situation.
In Parquin, the community was intact because the parties had remained married, and the disposition by marriage contract was valid and enforceable.
McCloskey points out the crucial distinction between an inter vivos conditional donation of future property and a testamentary legacy. Moran did not make a donation in this marriage contract; he agreed to make a will in his wife's favor. Such a potestative promise, only tolerated in a marriage contract, was subject to revocation at his option.
This case differs from Succession of Cunningham, supra. The Moran marriage contract did not contain an inter vivos donation to take effect at the donor's death. Instead, Alfred Jay Moran promised to make a will in favor of his future wife, but the provision in the marriage contract that he would not revoke that will is unenforceable under LSA-C.C. art. 1690.
In Cunningham, the testamentary disposition had not been revoked, and the fault-free spouse was entitled to inherit. Here, Moran never wrote a will pursuant to the marriage contract.
Riddell, supra, involved a donation in the marriage contract itself and not a promise of future performance. The distinction is between a present gift of future property to take effect at the donor's death and a promise to leave property by will.
The marriage contract of the Morans was no longer in effect after their divorce. It could not govern their future affairs. At dissolution of the marriage, plaintiff was entitled to the benefits which had been conferred by the marriage contract, but those benefits did not include an inter vivos donation of succession rights. Moran's potestative promise to make an irrevocable will in his wife's favor has no legal effect.

DECREE
For the foregoing reasons, the judgment of the court of appeal is reversed and vacated. The judgment of the trial court dismissing plaintiff's petition is reinstated and affirmed.
REVERSED.
CALOGERO, J., concurs and assigns reasons.
LEMMON, J., concurs for the reasons assigned by CALOGERO, J.
CALOGERO, Judge, concurring.
I respectfully concur in the result reached by the majority opinion, although I do not join in all of what I perceive to be the majority's reasons for reaching that result.
Even if Moran had fulfilled his promise to execute a will which complied with Paragraph IV of the marriage contract, he would have had the right to revoke that will at any time. As the court of appeal held, an agreement not to revoke a will is unenforceable. La.Civ.Code art. 1890. *375 The fact that Moran desisted from executing the promise in the marriage contract obviated any need on his part to revoke the anticipated testamentary disposition. Because that promise would have been revokable at Moran's option even if it had been made, I agree that it should not be enforced under these circumstances.
On the other hand, I disagree with a major premise of the majority opinion, which is that Moran's commitment in the marriage contract was a "potestative promise." As promises go, Moran made an unqualified commitment to execute a will in accordance with the terms of the marriage contract. It was not a promise which was contingent solely on the will of the obligor, see La.Civ.Code arts. 1529 & 1770.
NOTES
[1] She is also known as Mrs. Murray Pearce, the widow of John E. Hurley. She has returned to the designation she used prior to her marriage to Alfred Jay Moran.
[2] Defendants are the succession, its executor, trustee of the Moran will, four Moran children, and other legatees.
[3] In her petition the wife alleged that she was divorced but found free from fault.
[4] Tr. 5.
[5] See Succession of Alfred Moran, 485 So.2d 623 (La.App. 4 Cir.1986), writ denied "result correct", 488 So.2d 204 (La.1986).
[6] Succession of Moran, 522 So.2d 1174 (La.App. 4 Cir.1988).
[7] LSA-C.C. art. 2329 states:

"Spouses may enter into a matrimonial agreement before or during marriage as to all matters that are not prohibited by public policy. "Spouses may enter into a matrimonial agreement that modifies or terminates a matrimonial regime during marriage only upon joint petition and a finding by the court that this serves their best interests and that they understand the governing principles and rules. They may, however, subject themselves to the legal regime by a matrimonial agreement at any time without court approval.
"During the first year after moving into and acquiring a domicile in this state, spouses may enter into a matrimonial agreement without court approval."
[8] LSA-C.C. art. 1690 states:

"Testaments are revocable at the will of the testator until his decease.
"The testator can not renounce this right of revocation nor obligate himself to exercise it only under certain words and restrictions, and if he does so, such declaration shall be considered as not written."
[9] Planiol, Traite Elementaire de Droit Civil, Vol. 3, Part 2, "Donations in Marriage Contracts", Sect. 3163, at page 544 (11th Ed.1938).
[10] Planiol, supra, Vol. 3, Part 1, "After Dissolution of the Marriage", Sect. 845 at page 50; Sect. 816 at 35.
[11] Planiol, supra, Vol. 3, Part 1, Sect. 845 at page 50.
[12] LSA-C.C. art. 1528 provides:

"A donation inter vivos can comprehend only the present property of the donor. If it comprehends property to come, it shall be null with regard to that."
[13] Aubry & Rau, Civil Law Translations, Book 3, Sects. 675 and 676, at p. 180 (1969).
[14] Planiol, supra, Vol. 3, Part 1, Sect. 796 at pp. 21-22; LSA-C.C. 1532, infra.
[15] LSA-C.C. art. 1529 which states:

"Every donation inter vivos made on conditions, the execution of which depends on the sole will of the donor, is null."
[16] LSA-C.C. art. 1532 states:

"The four preceding articles are not applicable to donations of which mention is made on the eighth and ninth chapters of the present title."
[17] LSA-C.C. art. 1976 now provides:

"Future things may be the object of a contract.
"The succession of a living person may not be the object of a contract other than an antenuptial agreement. Such a succession may not be renounced."
"Comments
"(a) This Article reproduces the substance of C.C. Art. 1887 (1870) and C.C. Art. 1888, as amended by Acts 1979, No. 711. It does not change the law.
"(b) Under this Article, a contract for the succession of a living person is null even if made with that person's consent. Antenuptial agreements constitute an exception in accordance with C.C. Art. 1888, as amended by Acts 1979, No. 711."
[18] Planiol, supra, Vol. 3, Part 1, Sect. 801, pages 24 and 25; Vol. 3, Part 1, Sect. 796, page 21; LSA-C.C. art. 1976, supra.
[19] LSA-C.C. art. 1735 provides:

"Fathers and mothers, the other ascendants, the collateral relations of either of the parties to the marriage, and even strangers, may give the whole or a part of the property they shall leave on the day of their decease, both for the benefit of the parties, and for that of the children to be born of their marriage, in case the donor survive the donee.
"Such a donation, though made for the benefit of the parties to the marriage, or for one of them, is always, in case of the survivorship of the donor, presumed to be made for the benefit of the children, or descendants to proceed from that marriage."
[20] LSA-C.C. art. 1745 provides:

"A donation of property in future, or of property present and in future, made between married persons by marriage contract, whether simple or reciprocal, shall be subject to the rules established by the preceding chapter, with regard to similar donations made to them by a third person, except that it shall not be transmissive to the children, the issue of the marriage, in case of the death of the donee before the donor."
[21] A donation made in contemplation of marriage falls if the marriage does not take place. LSA-C.C. art. 1740; Wardlaw v. Conrad, 18 La. App. 387, 137 So. 603 (1931).
[22] Compare LSA-R.S. 9:2351 which states:

"Every donation made after twelve o'clock noon, July 29, 1942, by a married person to his or her spouse shall be as irrevocable as if made to a stranger. However, where the donation is made by notarial act the donor may reserve the right of revocation by express stipulation therein. Any right of revocation so reserved unless renounced as provided in R.S. 9:2352, may be exercised at any time during the life of the donor, whether or not the marriage is then in existence, and whether or not the donee is then alive."
[23] LSA-C.C. art. 1736 provides:

"A donation, in the form specified in the preceding article, is irrevocable only in this sense, that the donor can no longer dispose of the objects comprised in the donation on a gratuitous title unless it be for moderate sums, by way of recompense or otherwise. "The donor retains till death the full liberty of selling and mortgaging, unless he has formally barred himself of it in the whole or in part."
[24] LSA-C.C. art. 1468 states:

"A donation inter vivos (between living persons) is an act by which the donor divests himself, at present and irrevocably, of the thing given, in favor of the donee who accepts it."
[25] LSA-C.C. art. 156 provides:

"In case of separation from bed and board, the party against whom it shall have been pronounced, shall lose all the advantages or donations, the other party may have conferred by the marriage contract or since, and the party at whose instance the separation has been obtained, shall preserve all those to which such party would have been entitled; and these dispositions are to take place even in case the advantages and donations were reciprocally made."
[26] LSA-C.C. art. 159 states:

"The effects of a divorce shall not only be the same as are determined in the case of a separation from bed and board, but it shall also dissolve forever the bonds of matrimony, between the parties, and place them in the same situation with respect to each other as if no marriage had ever been contracted between them.
"If a community property regime exists on the date of filing of the original petition in the action in which the judgment of divorce is rendered, the judgment of divorce carries with it the dissolution of the community, which dissolution is retroactive to the date on which the original petition in the action was filed, but such retroactive effect shall be without prejudice (a) to the liability of the community for the attorney fees and costs incurred by a spouse in the action in which the judgment is rendered, or (b) to rights validly acquired in the interim between commencement of the action and recordation of the judgment."
[27] Now Justice of the Louisiana Supreme Court.
[28] Thigpen v. Thigpen, 231 La. 206, 91 So.2d 12 (1956); Fertel v. Fertel, 148 So.2d 853 (La.App. 4 Cir.1962), writ refused 244 La. 133, 150 So.2d 589 (1963).
[29] Under Act 269 of 1916, LSA-R.S. 9:301 allowed a divorce when the spouses had lived apart for seven years.
[30] 77 So. at 507.