597 So.2d 1000 (1992)
Carlo LAROCCA
v.
Isabelle F. LAROCCA and Beverly Ann Matheson.
No. 91-C-1446.
Supreme Court of Louisiana.
April 20, 1992.
Stephen A. Berniard, Jr. and Lee A. Gallaspy, Raggio, Cappel, Chozen & Berniard, Lake Charles, for defendant-applicant.
William J. Riley, III, Arnette & Riley, Jennings, for plaintiff-respondent.
CALOGERO, Chief Justice.
This case presents an unusual legal question: does a divorce proceeding with an incidental property action for revocation of a spousal donation abate upon the death of the donor spouse, or may the succession representative of the deceased continue to litigate the matter because of the property interest of the deceased spouse's heirs? Mrs. Isabelle Larocca died while her appeal of the divorce judgment was pending and her succession's executrix, a daughter from a previous marriage, was substituted for her. On its own motion, the court of appeal dismissed the appeal, declared that Isabelle's death abated the entire action, and nullified a divorce judgment. We granted the writ because it appeared that the court of appeal erroneously applied the law and its decision would cause a material injustice.[1]
For the reasons which follow, we determine that because of the property rights involved, Isabelle's appeal regarding the divorce judgment did not abate upon her death and the district court's judgment of divorce is not null. We remand to the court of appeal to decide the merit of the appeal.
Isabelle and Carlo Larocca were married in September, 1971 and had no children *1001 during their seventeen-year marriage. Isabelle had three children from a prior marriage. In 1988, the parties voluntarily separated. On November 28, 1988, a judgment of separation was rendered in favor of Carlo and against Isabelle based upon abandonment. Her asserted cruel treatment cause of action was dismissed by the district court in the same judgment which granted Carlo's reconventional demand.
Carlo then moved to Lake Charles. Suspecting adultery, Isabelle hired private investigators to conduct surveillance of his activities. Carlo filed this suit for divorce in early 1989 on the grounds of a one year voluntary separation of the parties. Isabelle answered and reconvened, seeking a divorce based on adultery. Included in her reconventional demand was the allegation that Isabelle had donated to Carlo a substantial amount of property in Jefferson Davis and Calcasieu Parishes in contemplation of their marriage. In her demand, she sought revocation of the property donation, even though she stated her belief that a judgment in her favor (granting the divorce on the basis of Carlo's adultery) would revoke the donations under the self-operative provisions of former Louisiana Civil Code Articles 156 and 159.[2]
The Legislature removed Article 156 and amended Article 159 in the recent revision of the divorce law. One effect of this legislation was to eliminate this provision in our law for the revocation of donations made to a spouse against whom a separation or divorce was pronounced. This change took place coincident with the elimination of judicial separations altogether, and all references thereto in the Louisiana Civil Code, effective January 1, 1991.[3] Because this change regarding spousal donations was substantive rather than simply procedural or remedial, it is not retroactive. Ardoin v. Hartford Accident & Indem. Co., 360 So.2d 1331, 1339 (La.1978). Thus, the former provisions apply in the present case.
Isabelle's evidence at trial consisted of the testimony of three investigators and that of her son-in-law. She presented circumstantial evidence of Carlo's adultery.[4] *1002 At the conclusion of Isabelle's case, Carlo moved for a directed verdict under La. C.C.P. art. 1672(B). The district court denied the motion. Carlo thereupon put on his evidence, which consisted of photographs showing the layout of the area surrounding the trailer where Carlo allegedly committed adultery, a photography expert disputing some of the testimony of the private investigators, and the testimony of his daughter, his good friend, his alleged paramour, and himself. On June 22, 1989, the district court found in favor of Isabelle, rendering a judgment of divorce based on Carlo's adultery. The judge was unimpressed with the testimony of Carlo and his witnesses, including his alleged paramour, Ms. Nehrt, and was satisfied with plaintiff's circumstantial evidence.
Carlo timely moved for a new trial, arguing that the district court erred in failing to grant a directed verdict for him at the conclusion of Isabelle's case. He argued that she did not carry the heavy burden of proof required of the person seeking to prove adultery, contending that uncorroborated testimony of private investigators is not sufficient to form the basis of a judgment. He cited McCartan v. Filkins, 134 La. 795, 64 So. 717 (1914) and Patrick v. Patrick, 212 So.2d 145, 146 (La.App.2d Cir. 1968), in support of this contention.[5] Carlo claimed that the son-in-law's testimony about an earlier incident was not sufficiently corroborative because the latter was unable to testify regarding how the truck came to be parked outside Mrs. Nehrt's trailer on that occasion, how long it had been there, who was present in the trailer when the truck was parked outside, or that Carlo either arrived at or departed from the trailer on that occasion.[6] Further, he argued that even the investigators' testimony regarding the later incident in January, 1989[7] was itself contradictory and unbelievable. *1003 Among other things, they were not able to provide the court with a photograph of Carlo leaving the trailer (although they did furnish photographs of Ms. Nehrt leaving the trailer on one of the two mornings in January, 1989).
On July 31, 1989, the district court granted a new trial for argument only and then reversed its prior judgment.[8] Persuaded by Carlo's argument, the judge decided that the testimony of the private investigators was not corroborated as "required" by McCartan v. Filkins, 134 La. 795, 64 So. 717 (1914). Annulling the first judgment, the district judge signed another granting a divorce on the ground of voluntary separation after restricting his re-examination only to the evidence presented in Isabelle's case-in-chief (regarding the adultery allegation).
Isabelle timely appealed this latter judgment, and then died on December 27, 1990 while the appeal was pending. Her succession was opened in Jefferson Davis Parish. Beverly Matheson, one of her children by the prior marriage, was appointed testamentary executrix. Ms. Matheson obtained an order from the Third Circuit Court of Appeal substituting the succession for the appellant, her deceased mother. No objection to this substitution was made by Carlo, nor did either party raise the issues of mootness of the appeal or abatement of the action.
The court of appeal, on its own motion, declared that the death of Isabelle abated the entire action. 579 So.2d 1211. "[W]e determine that, considering this circumstance, this court should declare ex proprio motu that the trial court's judgment, pending on appeal, is null and of no force and effect." Id. The court relied upon La. C.C.P. article 428 and La.C.C. article 1766 which provide respectively:
Article 428. No abatement on death of party
An action does not abate on the death of a party. The only exception to this rule is an action to enforce a right or obligation which is strictly personal.
Article 1766. Strictly personal obligation
An obligation is strictly personal when its performance can be enforced only by the obligee, or only against the obligor....
The court also cited jurisprudential support for the abatement of divorce upon death of one of the parties. Arceneaux v. Arceneaux, 232 La. 494, 94 So.2d 449 (1957); Draper v. Draper, 554 So.2d 79 (La.App.2d Cir.1989). The court further explained that at the time of Isabelle's death, when the action purportedly abated, the district court's judgment was final, but not definitive; thus, that judgment had not acquired the authority of a thing adjudged. La.C.C.P. art. 1842 (since repealed by Acts 1990, No. 521, § 3, eff. January 1, 1991).
The dissenting court of appeal judge concluded that because substantial property interests are at stake, the divorce action should not abate upon the death of one of the parties, unlike the general rule that a strictly personal action abates upon death. He cited common law jurisdictions for support of his conclusion, as well as a Louisiana case involving the property rights of an adopted child.[9]
An action does not abate upon death of one of the parties unless the action is one to enforce a right or obligation which is strictly personal. La.C.C.P. art. 428. An *1004 obligation is strictly personal when its performance can only be enforced by the obligee or enforced against the obligor. La. C.C.P. art. 1766. An action of divorce is a personal action which abates upon death of one of the parties. Arceneaux, supra; Draper, supra.
A party seeking a divorce and combining with that action a claim for revocation of a donation need not file a separate suit to have the donation revoked. Vaughn v. Coco, 409 So.2d 282, 285 (La. App. 1st Cir.1981). Prior to the recent repeal of La.C.C. art. 156, effective September 7, 1990 for mutually at fault spouses and January 1, 1991 for all spouses,[10] the party at fault in a judicial separation lost all advantages and donations conferred by a marriage contract or made during the marriage.[11] This rule has been judicially interpreted to include donations made in contemplation of marriage as well. Roy v. Florane, 239 La. 749, 119 So.2d 849 (1960). The effect of Article 156 (i.e., that the party at fault in a separation loses all advantages or donations made for or during the marriage by the other spouse) was adopted by reference in La.C.C. art. 159[12] to extend to fault via divorce action as well as separation. Succession of Moran, 535 So.2d 369, 373 (La.1988).
Thus, although Article 156 was repealed coincident with the legislative revision abolishing legal separations, it was in effect at the time of the Laroccas' marriage, separation and divorce. The spouse found to be at fault in the separation or divorce judgments (before September 7, 1990) lost any advantages and donations previously made by the other spouse in contemplation of or during the marriage. Fargerson v. Fargerson, 593 So.2d 454 (La.App.2d Cir. 1992).[13] The revocation was self-operative under Articles 156 and 159 following a judgment of separation or divorce based on the fault of the donee spouse.
Louisiana jurisprudence has thus far not addressed the precise issue presented here: whether the death of one of the parties abates a divorce action to which there is appended an ancillary claim involving *1005 property interests where resolution of the latter depends upon a determination of fault in the final divorce judgment. However, reference to the French sources concerning revocation of spousal donations because of fault sufficient to warrant separation or divorce provides some guidance for the resolution of this issue of first impression.
This court reviewed the history of Article 156 in Roy v. Florane, supra. In the Louisiana Civil Code of 1808, Article 18 provided:
"In case of separation, any donation which the husband or wife may have made the one to the other, in consideration of their marriage, shall be void and without effect, ...."
In the 1825 Civil Code, Article 18 was brought into conformance with Article 299 of the Code Napoleon, 1804, which provided:
"No matter what may have been the cause for divorce, excepting mutual consent, the husband or wife against whom it shall have been granted, shall lose all the advantages which the other party shall have made to him or her, whether by marriage contract or since the marriage."
The court explained in Roy that:
"Article 156 of the LSA-Civil Code is consistent with the articles of [the Code Napoleon] providing for revocation of donations in consideration of marriage for cause of ingratitude."
Roy v. Florane, 119 So.2d at 852, n. 2.
Planiol noted that under Article 955 of the Code Napoleon, the source article of the Louisiana Civil Code Article 1560 which enumerates the instances in which ingratitude can be found,[14] the second cause for revoking a donation, "serious crimes, cruelty, and libel," includes matrimonial infidelity. Marcel Planiol, 3 Treatise on the Civil Law 292 (1938). He also explained that: The case law has been very liberal. It has considered the action for rescission implied in the action for divorce, for it the petitioner prevails in the divorce action, the gratuities fall automatically. Therefore heirs of a donor spouse have been permitted to continue the divorce action, extinguished by his death, as action for rescission.
Id. at 294 (emphasis added).
Moreover, when considering the operation of Article 299 (the source article for Louisiana Civil Code Article 156), Planiol stated:
Article 299 also produces its effect by operation of law. The law itself pronounces the forfeiture. "The spouse will lose" says Article 299. On the other hand, to obtain the desired revocation, a suit must always be brought against ungrateful donees. The revocation is obtained solely by judicial decree. The analogy however is quite striking. So much so that certain decisions permit the heirs of a spouse who died when a divorce suit was pending to resume it in order to obtain the revocation of liberalities on the ground of ingratitude.
Marcel Planiol, 1 Civil Law Treatise 706 (1959).
Similar to the French view, where property interests are at stake and one of the parties dies during the pendency of the appeal, most common law jurisdictions would allow the continuation of what would otherwise be a strictly personal action. Francis M. Dougherty, Annotation, Effect of Death of Party to Divorce Proceeding Pending Appeal or Time Allowed for Appeal, 33 A.L.R. 4th 47-62 (1984). For example, in Owen v. Owen, 208 Ark. 23, 184 S.W.2d 808 (1945), it was contended that the evidence upon which the judgment was based lacked corroboration and was not sufficient to support the judgment. The court held that although the death of one of the spouses pending an appeal would normally terminate the suit, because of the *1006 property rights in the case which depended upon the correctness of the divorce decree, it was the duty of the appellate court to review the judgment in order to settle the property rights. Similarly, in Dunn v. Dunn, 439 S.W.2d 830 (Tex.1969), the court held that where the property rights of the parties would be significantly affected depending upon whether the marriage was determined to have terminated by divorce or by death, the question of property rights did not become moot for purposes of appeal upon the death of one of the litigants.[15]
The author of the annotation cited above notes that it is important to distinguish between "the abatement of the appeal, as such, and the abatement of the whole proceeding...." Annotation, 33 A.L.R. 4th at 52. In Nickerson v. Nickerson, 34 Or. 1, 48 P. 423 (1897), the wife obtained a divorce judgment against the husband giving her the title to an undivided portion of her husband's property. After perfecting his appeal, the husband died. Counsel for both parties sought abatement: the husband contended that abatement of the appeal would place the spouses in the position they were in prior to the judgment of divorce, and the wife claimed that abatement would allow the judgment of the trial court to remain in full force and effect as a final determination of the rights of the parties. The court disagreed with both parties. It held that where the consequences of a divorce would affect the property rights of the parties, the heirs or representatives may have such an interest in the resolution of the litigation that the cause survives for the heirs, but only for the purpose of ascertaining whether the property interests had been properly decided by the lower court.
Although Louisiana courts have not dealt with this exact issue, they have protected others' property interests in somewhat analogous situations by permitting the continuance of an appeal rather than considering an action abated. For example, the court in Cortes v. Fleming, 307 So.2d 611 (La.1973), aff'd on rehearing, 307 So.2d 618 (La.1974), originally held that alimony was a civil effect of marriage in favor of a good faith putative wife when her husband was in bad faith. Then, the court discovered that the husband had died prior to release of the judgment. The judgment had been rendered against a deceased party; therefore, it was null. On rehearing, the court held that: "[T]he right of the plaintiff to the alimony past due is a property right which is not defeated by the death of the defendant." Id. at 620.
Similarly, in Kirby v. Albert T.J., M.D., 517 So.2d 974 (La.App. 3d Cir.), writ denied (in a 4-3 vote), 519 So.2d 107 (La. 1987), the court of appeal permitted an adoptive father's succession representative to continue with an appeal on the merits. The natural father was appealing the trial court's judgment which granted an adoption by the adoptive father. The court of appeal emphasized the importance of the vested property rights in holding that the otherwise personal action did not abate upon the adoptive father's death:
In view of these substantive rights [inheritance rights, survival action and wrongful death action beneficiaries] becoming vested in the respective parties,... we are unable to accept appellant's argument [i.e., that the petition of adoption is a personal action which should abate upon the adoptive father's death] that the adoption should be disturbed because of the death of the adoptive parent, Michael Kirby.
Kirby, 517 So.2d at 977.
In the instant case, as in the ones discussed above, there exists a substantial property interest that distinguishes it from simply a divorce action without an incidental claim affecting property rights. If the second divorce judgment, the one in favor of Carlo (based on living apart for over one year) is found to be the proper and dispositive *1007 judgment, Carlo would continue to own the property.[16] On the other hand, if the trial judge erred in granting the new trial, the first fault-based judgment in favor of Isabelle would perhaps be reinstated and, as a consequence, the spousal donation revoked.
The divorce action, a strictly personal one, abates upon the death of either of the parties. However, because of the inextricable property rights, which depend upon whether the first divorce judgment based on adultery was properly upset by the district court, this case did not abate upon Isabelle's death. We therefore remand to the court of appeal to decide the merit of the appeal which is properly being pursued at this time by the executrix of the succession.

DECREE
For the foregoing reasons, we reverse the judgment of the court of appeal which declared the Laroccas' divorce action abated, nullified the judgment of divorce and dismissed the succession representative's appeal. We remand to the court of appeal to decide the merit of the appeal and render judgment in the case.
REVERSED, REMANDED TO THE COURT OF APPEAL.
DENNIS, J., concurs with reasons.
DENNIS, Justice, concurring.
I respectfully concur.
Civil Code article 1561 provides that the general right of a donor to revoke a donation because of the donee's ingratitude may be enforced by the donor's heirs if the donor had brought an action to revoke within the year in which the act of ingratitude was committed, or the donor died within that year. In my opinion, this article indicates that the right to revoke a donation is not strictly personal but a heritable right. Unlike the right to revoke a donation for ingratitude, a strictly personal obligation can be enforced only by the obligee. C.C. art. 1766. Furthermore, every obligation is deemed heritable as to all parties, except when the contrary results from the terms or from the nature of the contract. C.C. art. 1765. Insofar as I am aware, there is no basis in law or in the terms or nature of the donation at issue here, that militates against the conclusion that a donor's right to revoke is a heritable right. Of course, the donor's right to revoke being asserted here is a more specific form of the right, i.e., the donor's right to revoke a donation to a spouse included within an action for divorce based on the spouse's fault and ingratitude. C.C. art. 156 (Repeal eff.1991); C.C. art. 159 (1980). Nevertheless, it is essentially a right to revoke a donation for disloyalty and ingratitude, and according to the pertinent codal principles, viz., C.C. arts. 1765 and 1766 directly and 1561 by analogy, is fully heritable. Accordingly, for these reasons and those stated by the majority opinion, I see no reason that the legal successor to the deceased donor cannot be substituted for her in the action to revoke the donation.
NOTES
[1] Supreme Court Rule X, § 1(a)(4) sets forth one of the five categories which ordinarily must be present before this court will grant the writ:

Erroneous Interpretation or Application of Constitution or Laws. A court of appeal has erroneously interpreted or applied the constitution or a law of this state or the United States and the decision will cause material injustice or significantly affect the public interest.
[2] At the time of this action, Article 156 provided:

In case of separation from bed and board, the party against whom it shall have been pronounced, shall lose all the advantages or donations, the other party may have conferred by the marriage contract or since, and the party at whose instance the separation has been obtained, shall preserve all those to which such party would have been entitled; and these dispositions are to take place even in case the advantages and donations were reciprocally made.
Article 156 was repealed by Acts 1990, No. 1009, § 9, eff. Jan. 1, 1991.
Prior to the legislative revision, Article 159 formerly provided, in part:
"The effects of a divorce shall not only be the same as are determined in the case of separation from bed and board, it shall also dissolve...."
Article 159 was also amended in Acts 1990, No. 1009, § 2 omitting unnecessary language (primarily pertaining to legal separations) and relocating the former provisions for attorney's fees and costs to Articles 2357 and 2362.1.
[3] The Legislature effected a comprehensive revision of the laws pertaining to the termination of marriages which eliminated any provision for or references to legal separation. Acts 1990, No. 1009. This Act amended Chapter 4 of Title IV of Book I of the Civil Code to read as follows:

CHAPTER 4TERMINATION OF MARRIAGE
Art. 101. Termination of marriage
Marriage terminates upon:
The death of either spouse.
Divorce.
A judicial declaration of its nullity, when the marriage is relatively null.
The issuance of a court order authorizing the spouse of a person presumed to be dead to remarry, as provided by law.
Following this article, Comment (c) states that: "The source Article's reference to the effect of separation from bed and board has been omitted because this revision does not provide for legal separation."
[4] The testimony from the investigators consisted of their observing Carlo's truck parked outside his alleged paramour's (Mrs. Nehrt's) trailer overnight and watching him leave her residence the next morning. On an earlier occasion, the son-in-law drove by and noticed the presence of the truck parked outside the trailer early in the evening and then back at Carlo's daughter's residence (where he lived) later that same evening. The trial court "wasn't impressed" with Carlo's testimony attempting to explain the presence of his truck at her place, and also did not find Ms. Nehrt's testimony credible.
[5] Although McCartan has been cited in this case and elsewhere for the proposition which was urged by Carlo (i.e., that uncorroborated testimony of private investigators cannot be the basis of a judgment of adultery), the subsequent jurisprudence has not remained as narrow as described by Carlo or the court of appeal. In McCartan, this court did caution that a private investigator may be "a dangerous witness" because his or her pay "depends upon the extent or success of his employment...." However, the court embraced the following rule, quoting from the 1904 precursor of Corpus Juris Secundum:

Although the testimony of a person employed to watch and detect the husband or wife suspected of adultery is competent and ought not to be absolutely rejected, it should be received with great caution, and scrupulously and minutely scrutinized, and ordinarily it should be corroborated either by the facts and circumstances in evidence, or by the direct testimony of other witnesses, or by both.
14 Cyclopedia of Law & Proc. 698 (1904).
Subsequent adultery cases have not applied the private investigator rule as it was narrowly articulated in McCartan. For example, in Coston v. Coston, 196 La. 1095, 200 So. 474, 476 (1941), this court explained that:
"[A] prima facie case may be made out by showing facts or circumstances that lead fairly and necessarily to the conclusion that adultery has been committed as alleged in the petition. For instance, the character of the house where the parties met, and all the facts indicating illicit relations between them may be proved, and it is then for the court to determine whether those facts and circumstances have made out the case.".
And most notably, in Hermes v. Hermes, 287 So.2d 789 (La.1973), where the only issue before this court was whether the husband sustained his burden of proving adultery by circumstantial evidence, the court affirmed an adultery judgment where the only evidence presented by the husband was that of private investigators who had conducted surveillance on the wife. The testimony of the detectives in that case was similar to the testimony in the instant case: the detectives recited their observations of the alleged paramour and Mrs. Hermes entering and leaving the apartment. No photographs of either party were entered into evidence. There was no corroborating testimony in Hermes. The court stated that "circumstantial proof of adultery `must be so convincing as to exclude any other reasonable hypothesis but that of guilt.'" Hermes, 287 So.2d at 791 (quoting Hayes v. Hayes, 225 La. 374, 73 So.2d 179 (1954)).
[6] Larry Richard, Isabelle's son-in-law, noticed Carlo's truck parked in front of Nehrt's mobile home one evening in November, 1988. Richard had been in the area visiting a friend during the evening hours.
[7] Shortly after her son-in-law reported seeing Carlo's truck parked outside Nehrt's trailer, Isabelle hired private investigators to conduct surveillance on Carlo, particularly around the residence of Ms. Nehrt. It was in the latter part of December, 1988 and January, 1989 that the investigators observed Carlo's truck parked in front of the mobile home during the evening hours, specifically between 11:00 p.m. and 2:00 a.m., and saw both parties leave the trailer early one morning after overnight surveillance.
[8] The court stated:

Therefore, this Court erred as a matter of law by not granting Mr. Larocca's judgment of dismissal at the close of Mrs. Larocca's case. Accordingly, Mrs. Larocca's judgment of divorce on her reconventional demand is hereby reversed. Judgment is now rendered in favor of Mr. Larocca on his main demand granting him divorce on the grounds of living separate and apart, I believe it was, what, six months after judgment of separation? [In fact, it was one year living separate and apart.]
[9] Kirby v. Albert T.J., M.D., 517 So.2d 974 (La. App. 3d Cir.), writ denied, 519 so.2d 107 (La. 1987) (holding that the death of the adoptive father during the appeal of an adoption judgment by the natural father did not cause the appeal to abate).
[10] Acts 1990, No. 99, an article in effect only from September 7, 1990 through January 1, 1991 (the effective date of the legislative revision which vacated articles 138 to 145), specifically provided that the provisions of Article 156 did not apply to mutual fault separations:

Art. 141. Separation; mutual fault; alimony pendente lite; permanent alimony
A separation from bed and board shall be granted although both spouses are mutually at fault in causing the separation.... Moreover, the provisions of Article 156 do not apply." (emphasis added)
Acts 1991, No. 367, § 4 repealed this article.
Article 156 was repealed by Acts 1990, No. 1009, § 9, eff. January 1, 1991.
[11] Prior to 1942, interspousal donations were originally revocable, contrary to the irrevocability of inter vivos stranger donations. Article 1749 in the 1870 Civil Code provided, in part:

"All donations made between married persons, during marriage, though termed inter vivos, shall always be revocable."
This article was repealed by Acts 1942, No. 187 which is now contained in La.R.S. 9:2351, as amended by Acts 1950, No. 316, § 1:
Every donation made after twelve o'clock noon, July 29, 1942, by a married person to his or her spouse shall be as irrevocable as if made to a stranger. However, where the donation is made by notarial act the donor may reserve the right of revocation by express stipulation therein. Any right of revocation so reserved unless renounced as provided in R.S. 9:2352, may be exercised at any time during the life of the donor, whether or not the marriage is then in existence, and whether or not the donee is then alive.
The effect of this revision in the law of donations between married persons was to make interspousal donations as irrevocable as any other donation. Therefore, since 1942, revocation of donations between spouses must be governed by the same articles which govern all inter vivos donations, La.Civil Code articles 1559, et seq. Additionally, however, until the recent revision of the divorce law, Article 156 provided for spousal revocation based upon marital fault. See supra note 2.
[12] See supra note 2 for the language of Article 159 in effect for purposes of this case.
[13] There is a scarcity of jurisprudence concerning Article 156. However, in the recent Fargerson case, the court noted that:

"Art. 156 was enacted prior to the law providing for mutual fault separations and intended to apply only when one party was found to be at fault. A reading of Art. 156 demonstrates its inapplicability to mutual fault separations by particularly providing that the spouse who obtained the separation would preserve all advantages."
Fargerson, 593 So.2d at 456.
[14] Louisiana Civil Code Article 1560 provides:

Revocation on account of ingratitude can take place only in the three following cases:
1. If the donee has attempted to take the life of the donor;
2. If he has been guilty towards him of cruel treatment, crimes or grievous injuries;
3. If he has refused him food, when in distress.
[15] See also Verret v. Verret, 570 S.W.2d 138 (Tex.Civ.App. 1st Dist.1978) (holding that if property rights of the parties to a divorce action would be significantly affected, depending upon whether the marriage terminated by divorce or death, the case was not moot); Hirchert v. Hirchert, 243 Wis. 519, 11 N.W.2d 157 (1943) (holding that an appeal from a divorce decree does not abate upon the death of one of the parties when the decree contains provisions for the final division of property).
[16] The possibility of the heirs independently bringing a successful action for revocation of the donated property based on Carlo's ingratitude without a finding of adultery is slim because, among other reasons, under La.C.C. art. 1561, they have one year to bring such an action on behalf of the donor if the donor "died within the year in which the act of ingratitude was committed." Therefore, they could successfully step into the shoes of Isabelle to continue the present action asserted on the grounds of adultery, but might well be time-barred from bringing a new cause of action based on a separate act of ingratitude not previously asserted by Isabelle.