McCLENDON, J.
*42 Appellant seeks review of a judgment granting appellee's motion revoking appellant's appointment as executrix in a succession. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
Betty Miller Buhler married Mark Howard Buhler in 1988. They subsequently divorced in 1994. In 2000, they remarried. During their second marriage, Mr. Buhler, on May 18, 2013, executed his "Last Will and Testament" bequeathing all of his property "to my wife, Betty Miller Buhler" and naming Ms. Buhler executrix.
In 2014, Ms. Buhler filed a Petition for Divorce in the same suit record as the 1994 divorce (Docket No. 103,346, Division B, The Family Court in and for the Parish of East Baton Rouge). More than six months after Ms. Buhler filed her petition for divorce, Mr. Buhler filed a "Rule to Show Cause Why a Judgment of Divorce Should Not Be Granted." Mr. Buhler died on August 4, 2015, after a judgment of divorce had been rendered and signed in the 2014 family court proceeding, but before the delay for taking an appeal had expired.
On August 12, 2015, Ms. Buhler filed a "Petition for Probate of Statutory Testament" in district court, alleging decedent was her husband at the time of his death. She attached decedent's testament to the petition, noting that it designated her to serve as executrix. The district court signed orders probating the testament and confirming Ms. Buhler as testamentary executrix.
In February 2016, Nickie Buhler Paul, the daughter of decedent, filed a "Motion for Revocation of Appointment of Executrix," alleging that Ms. Buhler and decedent were divorced at the time of decedent's death, and Ms. Buhler misrepresented her status to the court. Ms. Paul sought to revoke Ms. Buhler's appointment as executrix and requested that she be appointed as executrix. Ms. Buhler opposed the motion, arguing that the divorce action abated on Mr. Buhler's death because the judgment of divorce was not final given that the appeal delays had not expired. Alternatively, she argued that the judgment of divorce was invalid or null.
The matter was heard by the district court on September 26, 2016. Prior to the hearing on this motion, the parties signed a stipulation in which they agreed to the authenticity and admissibility of certain exhibits, including "[t]he entire suit record for Buhler v. Buhler, Docket No. 103,346, Division B, The Family Court in and for the Parish of East Baton Rouge."[1]
*43 Following the hearing, the district court determined that the family court had rendered a judgment of divorce prior to Mr. Buhler's death and found that any challenge to the validity of that judgment should be made in the court where the judgment had been rendered, which was the Family Court of East Baton Rouge Parish. Additionally, the district court held that under LSA-C.C. art. 1608,[2] the judgment of divorce negated any testamentary provisions in favor of Ms. Buhler. Accordingly, Ms. Buhler's appointment as executrix was revoked, and Ms. Paul was appointed executrix. Ms. Paul's counsel was instructed to prepare a judgment.
Thereafter, on October 7, 2016, Ms. Buhler's counsel filed a proposed judgment, which indicated that an opposition to the proposed judgment had been received from Ms. Paul on the basis that it did not accurately reflect the detailed oral ruling rendered by the district court and that Ms. Paul's counsel, not Ms. Buhler's counsel, had been directed to draft the judgment. Nevertheless, on October 13, 2016 the district court signed the judgment submitted on behalf of Ms. Buhler. That judgment provided:
IT IS ORDERED, ADJUDGED AND DECREED that the Motion for Revocation of Appointment of Executrix is granted and that the appointment of Betty Buhler as Executrix of the estate of Mark Howard Buhler is revoked.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Nickie Buhler Paul is hereby appointed as Dative Testamentary Executrix of the Succession and it is further ordered that Letters of Administration be issued to her upon her compliance with the requirements of law.
The day before the filing of a judgment on behalf of Ms. Buhler, Ms. Paul's counsel had also filed a proposed judgment. In that proposed judgment, Ms. Paul stated that an opposition was received from Ms. Buhler's counsel to the inclusion of paragraphs 3, 4, and 5 of the judgment as well as to an additional provision that was redacted. However, the district court signed Ms. Paul's proposed judgment on October 14, 2016, the day after it signed Ms. Buhler's proposed judgment.[3]
*44 On October 26, 2016, Ms. Buhler's counsel filed a motion for new trial from the October 13, 2016 judgment, which was denied by the district court. Thereafter, Ms. Buhler's counsel filed a Motion for Devolutive Appeal from the judgment signed on October 13, 2016. The district court signed an order granting the appeal of that judgment.[4]
In her appeal, Ms. Buhler assigns the following as error:
1. The trial court abused its discretion by removing Appellant, Betty Miller Buhler, as Executrix.
2. The trial court committed legal and reversible error by removing Appellant as Executrix without first conducting a contradictory hearing.
3. The trial court abused its discretion in denying Appellant's motion for new trial.
RULE TO SHOW CAUSE
This court, ex proprio motu, issued a rule to show cause ordering that the parties show cause by briefs which judgment was the proper judgment before the court. The rule to show cause was referred to this panel to be decided in connection with this appeal.
As stated above, the district court signed the judgment submitted on behalf of Ms. Buhler on October 13, 2016. On the following day, October 14, 2016, the district court signed the competing judgment addressing the same motion, which was submitted on behalf of Ms. Paul. While the first and fifth paragraphs of the second judgment were substantively the same as the first judgment, paragraphs two through four of the second judgment added substantive rulings, including recognition and validation of the divorce judgment in the family court proceeding, revocation of legacies in favor of Ms. Buhler, and recognition of Ms. Paul as an intestate heir.
If a substantive change is not made pursuant to a contradictory motion for new trial filed by the parties or by the court on its own motion pursuant to LSA-C.C.P. art. 1971, by consent of the parties, or by a timely appeal, the subsequent amending judgment is an absolute nullity. See Bourgeois v. Kost, 02-2785 (La. 5/20/03), 846 So.2d 692, 696 and McGee v. Wilkinson, 03-1178 (La.App. 1 Cir. 4/2/04), 878 So.2d 552, 554-55. As the second judgment rendered on October 14, 2016 made substantive changes to the original judgment and was not amended in accordance with the requisite procedure, it is an absolute nullity and without legal effect.[5] Therefore, we *45 annul and set aside the October 14, 2016 judgment and recognize the October 13, 2016 judgment as the proper judgment before this Court. See Hebert v. Blue's Auto and Truck Parts, 00-2154 (La.App. 1 Cir. 12/28/01), 804 So.2d 953, 956, writ denied, 02-0272 (La. 3/28/02), 812 So.2d 635.
Even so, Ms. Paul contends that the October 13, 2016 judgment should not control because it was not properly circulated pursuant to Louisiana District Court Rule 9.5. That rule provides that if a judgment is presented to the court for signature after rendition, the responsible attorney shall circulate the proposed judgment to counsel for all parties and allow at least five working days for comment before presentation to the court, and upon presenting it to the court, if an opposition was received, it must identify the nature of the opposition. Ms. Paul argues that the Rule 9.5 Certificate, on its face, shows the requirement of circulating the judgment was not met because it had been circulated only one day prior to being presented to the court. However, the stated purpose of the rule is to allow opposing counsel five working days for comment. In this case, comments were received prior to the proposed judgment being presented to the court. Specifically, the Certificate states that the proposed judgment was circulated to counsel by electronic mail on October 6, 2016. The judgment filed on October 7, 2016 states that opposition had been received from Ms. Paul's counsel that same date and identified the nature of Ms. Paul's opposition.[6] As such, the purpose for the rule was achieved-i.e., allowing Ms. Paul the opportunity to oppose the judgment and informing the trial court the nature of that opposition. Nevertheless, accepting for sake of argument that the failure to allow five working days prior to filing the proposed judgment with the district court was error, such error could be deemed harmless. See In re Interdiction of DeMarco, 09-1791 (La.App. 1 Cir. 4/7/10), 38 So.3d 417, 424 ("Although we find the failure to comply with Rule 9.5 troubling, ... we conclude that the trial court's error constituted harmless error," as the submitted judgment fully comports *46 with the trial court's oral reasons.) Accordingly, the October 13, 2016 judgment is properly before us on appeal.
DISCUSSION
Ms. Buhler contends that the trial court abused its discretion in removing her as executrix because the court did not have any grounds for removal under LSA-C.C.P. art. 3181.[7] We note, however, that Ms. Paul's motion for revocation also alleged that Ms. Buhler should be removed under LSA-C.C. article 1608, which provides, in pertinent part:
Revocation of a legacy or other testamentary provision occurs when the testator:
* * *
(5) Is divorced from the legatee after the testament is executed and at the time of his death, unless the testator provides to the contrary. Testamentary designations or appointments of a spouse are revoked under the same circumstances.
As such, not only does LSA-C.C. art. 1608 provide for revocation of testamentary dispositions upon divorce, but likewise provides for revocation of designations and appointments such as executors. See 1997 Official Comment (e). We likewise reject Ms. Buhler's argument that Ms. Paul has no right of action under LSA-C.C.P. art 3182 because she is not an interested party. Clearly, Ms. Paul, as an alleged intestate heir, has an interest in whether the testamentary dispositions and designations to Ms. Buhler are revoked under LSA-C.C. art. 1608.
On appeal, Ms. Buhler asserts that the divorce action abated by operation of law. Ms. Buhler contends that the Judgment of Divorce signed on July 20, 2015, was not executory in that the appeal delays had not yet run at the time of Mr. Buhler's death on August 4, 2015.[8] Accordingly, Ms. Buhler contends that the divorce action had abated and that she and Mr. Buhler were in effect still married at the time of his death. She therefore asserts that there was no revocation of the testamentary provision set forth in Mr. Buhler's will.
Abatement of actions is addressed in LSA-C.C.P. art. 428, which provides:
An action does not abate on the death of a party. The only exception to this rule is an action to enforce a right or obligation which is strictly personal.
An obligation is strictly personal when its performance can be enforced only by the obligee, or only against the obligor. LSA-C.C. art. 1766. Further, an action for divorce is a personal action that abates upon the death of one of the parties. Larocca v. Larocca, 597 So.2d 1000, 1004 (La. 1992). In Larocca, however, the Louisiana Supreme *47 Court held that a divorce action had not abated even though the wife died while the appeal was pending. The court explained that a judgment of divorce based on a finding of adultery would affect substantive incidental property rights that were alleged in the proceeding. Id. at 1006-07.
Ms. Buhler argues that while Larocca holds that abatement does not apply when substantial property rights are at issue, the exception applies only when the divorce action involves ancillary property rights which have been asserted in the proceedings. Because no ancillary matters were pled in the divorce action at issue, Ms. Buhler contends that the Larocca exception is inapplicable. As such, Ms. Buhler asserts that the action abated on Mr. Buhler's death and that she could not appeal the Final divorce judgment due to the abatement.
In Larocca, a husband sought a divorce from his wife based on being separate and apart for a year. The wife reconvened and sought a divorce based on adultery. In her reconventional demand, the wife also alleged that she had donated a substantial amount of property to her husband in contemplation of their marriage and a judgment in her favor on adultery would revoke those donations. The trial court subsequently entered a judgment in favor of the wife based on the husband's adultery. Thereafter, the trial court granted a new trial, annulled the first judgment, and issued a new judgment granting a divorce based on voluntary separation. The wife appealed the judgment urging that she should have been granted a divorce based on her husband's adultery. However, the wife died while the appeal was pending. The testamentary executrix for the wife's succession was substituted for the wife.
The appellate court, on its own motion, determined that the action abated on the wife's death. Larocca, 597 So.2d at 1003. On review, the Louisiana Supreme Court indicated that no other Louisiana court had previously addressed the issue on appeal: whether the death of one of the parties abates a divorce action to which there is appended an ancillary claim involving property interests where resolution of the latter depends upon a determination of fault in the final divorce judgment. Id. at 1004-05. Following its survey of the law, the Louisiana Supreme Court determined that the action had not abated, reasoning as follows:
The divorce action, a strictly personal one, abates upon the death of either of the parties. However, because of the inextricable property rights, which depend upon whether the first divorce judgment based on adultery was properly upset by the district court, this case did not abate upon [wife's] death. We therefore remand to the court of appeal to decide the merit of the appeal which is properly being pursued at this time by the executrix of the succession.
Id. at 1007.
Ms. Buhler asserts that the exception recognized by Larocca should be restricted to cases where ancillary property matters were pled in the divorce action itself. We disagree. In making its determination in Larocca, the Louisiana Supreme Court considered French sources concerning revocation of spousal donations because of fault and the related codal articles and their history. The Louisiana Supreme Court cited Planiol, wherein he noted that Article 955 of the Code Napoleon, the source article of Louisiana Civil Code Article 1560 (now LSA-C.C. art. 1557 ) which enumerates the instances in which ingratitude can be found, included matrimonial infidelity. Larocca, 597 So.2d at 1005, cit ing *48 Marcel Planiol, 3 Treatise on the Civil Law 292 (1938). Planiol further explained:
The case law has been very liberal. It has considered the action for rescission implied in the action for divorce, for if the petitioner prevails in the divorce action, the gratuities fall automatically. Therefore heirs of a donor spouse have been permitted to continue the divorce action, extinguished by his death, as action for rescission.
Larocca, 597 So.2d at 1005 citing Planiol at 294. Moreover, the court noted that when considering the operation of Article 299 of the Code Napoleon (the source article for Louisiana Civil Code Article 156 (now repealed by 1990 La. Acts No. 1009, § 9) ), Planiol stated:
Article 299 also produces its effect by operation of law. The law itself pronounces the forfeiture. "The spouse will lose" says Article 299. On the other hand, to obtain the desired revocation, a suit must always be brought against ungrateful donees. The revocation is obtained solely by judicial decree. The analogy however is quite striking. So much so that certain decisions permit the heirs of a spouse who died when a divorce suit was pending to resume it in order to obtain the revocation of liberalities on the ground of ingratitude.
Larocca, 597 So.2d at 1005, citing Marcel Planiol, 1 Civil Law Treatise 706 (1959).
Moreover, the court noted that similar to the French view, where property interests are at stake and one of the parties dies during the pendency of the appeal, most common law jurisdictions would allow the continuation of what otherwise would be a strictly personal action. Larocca, 597 So.2d at 1005. We also recognize that the majority of these courts have concluded that the action does not abate even if the judgment of divorce did not expressly address property provisions. Specifically, see 33 A.L.R.4th 47 (Originally published in 1984), entitled "Effect of death of party to divorce proceeding pending appeal or time allowed for appeal," which provides as follows in its updated form:
In a number of cases, the courts have determined that such property rights were involved as to cause the appeal to survive despite the death of one of the parties, although the divorce decree did not contain any express property provisions. In these cases, the courts held that were the divorce decree to be allowed to stand, without review, inheritance and dower rights of the surviving spouse would be affected (§ 6[a], infra). Although a few cases have expressly rejected this proposition (§ 6[b], infra), its implication may have a profound effect on the general rule, heretofore followed, ordinarily requiring abatement. If the proposition that the property interest which will prevent an appeal from a divorce decree from abating upon the death of one of the parties need not be expressly provided for in the divorce decree is fully developed, it is possible that the courts adopting it will hold that the death of a party never abates an appeal from a divorce decree because inheritance and dower rights are always potentially involved.
Considering the foregoing, we cannot conclude that the action abated merely because the divorce judgment itself did not specifically address ancillary property matters. Although Larocca involved a situation where property rights had been asserted, the analysis and the jurisprudence referenced therein does not indicate that the holding is restricted to only those cases where property rights have been specifically alleged. Further in Larocca, Chief Justice Calogero writing for the court stated "because of the inextricable property rights, which depend upon *49 whether the first divorce judgment based on adultery was properly upset by the district court, this case did not abate upon Isabelle's death." Larocca, 597 So.2d at 1007. In the case before us, legacies and testamentary provisions were tied to the final judgment of divorce and the revocation of those rights were obtained solely by judicial decree terminating the marriage. Therefore, we conclude that the action for divorce did not abate. Having so found, Ms. Buhler could have taken an appeal to challenge the veracity of the Final judgment of divorce before the appeal delays had run. Absent a timely appeal, the judgment of divorce became final and definitive.
Even so, Ms. Buhler contends that the July 20, 2015, judgment of divorce is an absolute nullity.[9] We recognize that if the judgment of divorce is an absolute nullity, it can be attacked collaterally. While relatively null judgments must be attacked directly and within the time limitation set forth in LSA-C.C.P. art. 2004, absolutely null judgments may be attacked collaterally, at any time, by rule or by any other method. In re J.E.T., 16-0384 (La.App. 1 Cir. 10/31/16), 211 So.3d 575, 581. As such, we will consider Ms. Buhler's argument that the judgment of divorce at issue is absolutely null.
Ms. Buhler asserts that the July 20, 2015 judgment of divorce is absolutely null for two reasons. First, she contends that the petition for divorce was not properly served on Mr. Buhler, but rather served on Mr. Buhler's attorney. Ms. Buhler asserts that because Mr. Buhler was never personally served nor did he waive service in accordance with LSA-C.C.P. art. 3957, the requisite one-hundred and eighty day time period between service of the petition and the rule to show cause under LSA-C.C. art. 103.1 never began to run. See LSA-C.C.P. art. 3952. As such, Ms. Buhler avers that because the requisite delay had not run, the judgment at issue is an absolute nullity. See LSA-C.C.P. art. 3953.
Second, Ms. Buhler contends that neither she nor her attorney at the time were properly served with Mr. Buhler's rule to show cause why the divorce should not be granted. Ms. Buhler notes that although her attorney was present at the April 15, 2015 hearing on Mr. Buhler's rule, Ms. Buhler did not appear. Ms. Buhler avers that neither she nor her attorney were given prior notice of the hearing, and that her attorney, who coincidentally happened to be present at the courthouse on the date of the hearing, acted without prior consultation with Ms. Buhler. Ms. Buhler avers that it was possible that she may have changed her mind and no longer wished the divorce to take place, despite the fact that she initialed the original proceeding.
Ms. Buhler further notes that the judgment of divorce was ultimately not signed until July 2015. Ms. Buhler maintains that the delay between the hearing and the signing of the judgment of divorce creates problems in that it was possible that she and Mr. Buhler could have reconciled in the interim period.
Although Ms. Buhler contends that she failed to properly serve Mr. Buhler with the petition for divorce, Mr. Buhler never filed a declinatory exception raising the insufficiency of citation or the insufficiency of service of process, and such objections are waived unless pleaded therein. See LSA-C.C.P. art. 925. Further, Mr. Buhler was the party who ultimately filed the rule to show cause to seek the divorce. Specifically, *50 on March 20, 2015, Mr. Buhler filed a "Motion for Judgment of Divorce" wherein he alleged that he received service, apparently through his attorney, on September 2, 2014. Moreover, he acknowledged that he and Ms. Buhler "have lived separate and apart continuously for the previous one-hundred and eighty days" and that he desired the divorce. Further, Mr. Buhler executed an affidavit acknowledging the facts in the "Motion for Judgment of Divorce" were true and correct.
Although Ms. Buhler did not appear at the April 15, 2015 hearing, she subsequently signed a "Waiver of Notice" on May 29, 2015, specifically acknowledging as follows:
That she is the defendant in the Motion for Judgment of Divorce filed by Mark H. Buhler, Sr., and accompanying Notice; that she acknowledges receipt of a certified and verified copy of the Motion for Judgment of Divorce filed by Mark H. Buhler, Sr., and accompanying Notice; that she expressly waives service of the Motion for Judgment of Divorce, accompanying Notice, Citation, and service of process, and her appearance at the Motion for Final Divorce Confirmation Hearing held on April 15, 2015.
Therein, Ms. Buhler made no assertion that the allegations contained in Mr. Buhler's motion, specifically including that the parties had lived separate and apart continuously for the prior one-hundred and eighty days, were not true and correct. Moreover, although she had the opportunity to do so, she did not assert that she no longer desired the divorce she sought-a divorce which was later granted by the family court after receiving Ms. Buhler's waiver. Under these circumstances, we cannot conclude that the divorce judgment is an absolute nullity.
Accordingly, because Ms. Buhler was no longer Mr. Buhler's spouse at the time he died, she became disqualified to be executrix by operation of law. See LSA-C.C.P. art. 3182 and LSA-C.C. art. 1608(5). As such, we find no error in the district court removing Ms. Buhler as executrix. Assignment of error number one is without merit.
In her second assignment of error, Ms. Buhler contends that the district court committed legal and reversible error in removing her as executrix without first conducting a contradictory hearing. Ms. Buhler avers that she was unable to present any testimony in her defense, nor was she able to advance certain defenses. At the hearing, however, we note that the parties stipulated to the authenticity and admissibility of exhibits.[10] The issues before the court hinged on matters of law, accepting the facts in the stipulation. While Ms. Buhler posits she was precluded from introducing certain testimony and defenses, Ms. Buhler did not object or seek to introduce anything beyond the stipulation. Moreover, she does not indicate what those defenses are or how they would have any potential impact on a ruling based on law. Ms. Buhler's second assignment of error is without merit.
In her third assignment of error, Ms. Buhler contends that the district court should have granted her a new trial because the court failed to consider her defenses of abatement and the absolute nullity of the judgment of divorce. However, we have reviewed the issues Ms. Buhler raises in her motion for new trial on appeal and have found no merit. Accordingly, we *51 find no merit in Ms. Buhler's third assignment of error.
CONCLUSION
For the foregoing reasons, we affirm the trial court's October 13, 2016 judgment and annul and set aside the trial court's October 14, 2016 judgment. Costs of this appeal are assessed to appellee, Betty Miller Buhler.
OCTOBER 13, 2016 JUDGMENT AFFIRMED; OCTOBER 14, 2016 JUDGMENT ANNULLED AND VACATED.
Theriot J. concurs

The family court suit record was not included in the appellate record when it was lodged with this court. As a result, on August 25, 2017, this court granted Ms. Paul's motion to supplement the record with the entirety of the family court suit record. In that same order, this court also denied as moot Ms. Buhler's motion to supplement the record with only portions of the family court suit record.

Louisiana Civil Code article 1608(5) provides for revocation of legacies and testamentary provisions when the testator is divorced from the legatee after the testament is executed.

The October 14, 2016 Judgment provided:
IT IS ORDERED, ADJUDGED AND DECREED that the Motion for Revocation of Appointment of Executrix is granted and that the appointment of Betty Buhler as Executrix of the estate of Mark Howard Buhler is revoked.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Judgment of Divorce rendered on July 20, 2015 in the matter entitled "Betty Lee Buhler versus Mark H. Buhler, Sr. [,]" bearing docket number 103,346 in the Family Court in and for the Parish of East of Baton Rouge is recognized as a valid Judgment of Divorce that had the effect of terminating the marriage between Betty Buhler and the decedent.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all fiduciary nominations of Betty Buhler and all legacies made to Betty Buhler in the Last Will and Testament of Mark Howard Buhler, probated heretofore herein, are deemed to have been revoked pursuant to Louisiana Civil Code Article 1608, in light of the Judgment of Divorce referenced hereinabove.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Nickie Buhler Paul is recognized as an intestate heir of the decedent.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Nickie Buhler Paul is hereby appointed as Dative Testamentary Executrix of the Succession and it is further ordered that Letters of Administration be issued to her upon her compliance with the requirements of law.

A judgment appointing or removing a succession representative is a final judgment subject to immediate appeal. In Re Succession of LeBouef, 13-0209 (La.App 1 Cir. 9/9/14), 153 So.3d 527 (en banc).

Ms. Paul filed a response to the show cause order, in which she argues that the second judgment, signed on October 14, 2016, is a permissible amended judgment because it was signed within the delay for a motion for new trial, relying on Radcliffe 10, L.L.C. v. Zip Tube Systems of Louisiana, Inc., 09-0417, 09-0418 (La.App. 1 Cir. 12/29/09), 30 So.3d 825, writ denied, 10-0244 (La. 4/9/10), 31 So.3d 394. We note that our decision in Radcliffe was based on application of LSA-C.C.P. art. 2005, which is not applicable herein. Specifically, in Radcliffe, following a trial on the merits, two judgments were rendered. The district court noted that the first judgment had been signed in error and subsequently signed a second judgment, which had been filed within the new trial delays. The second judgment awarded general damages, which the first had failed to do. An appeal was taken as to both judgments, and this court affirmed the judgment and amended the judgment in part, and the Louisiana Supreme Court denied the related writ application. Subsequently, one of the defendants filed a petition to declare the second judgment an absolute nullity. This court recognized that LSA-C.C.P. art. 2005 controlled. Id. at 832. As explained in the concurring opinion by Judge Parra, when an absolutely null judgment has been previously affirmed on appeal, the second paragraph of LSA-C.C.P. art. 2005 allows the annulment of such a judgment under only two circumstances: (1) when the ground for nullity did not appear in the record of the appeal, or (2) when the ground for nullity was not considered by the appellate court. 30 So.3d at 832. Neither of those circumstances existed in Radcliffe. At the time the second judgment was affirmed, both judgments appeared in the record, and the substantive nature of the change in the second judgment was apparent. Also, although neither party briefed the nullity issue at that time and this court's original opinion did not refer to the first judgment or the nullity issue, the absolute nullity of the judgment was specifically raised as a grounds for rehearing and in a rehearing application. Id. at 833. Further, this court specifically noted that "we do not directly address the issue of the proper procedure for a trial court to correct a substantive error because it is not necessary for a decision in this case."Id. at 832. Moreover, this court, in decisions rendered after Radcliffe , has annulled latter judgments signed within the new trial delays if the requirements for substantively amending a judgment were not met. See Preis Gordon, APLC v. Chandler, 15-0958 (La.App. 1 Cir. 2/26/16), 191 So.3d 31, 34 n.1, writ denied, 16-0590 (La. 5/20/16), 191 So.3d 1067, and Thiruvengadam v. Doe, 15-1458 (La.App. 1 Cir. 8/4/16), 2016 WL 4142081 (unpublished).

Ms. Paul does not assert that the representations were incorrect or that the first judgment was inaccurate. Rather, Ms. Paul argues that the first judgment did not address the full scope of the court's ruling.

Louisiana Code of Civil Procedure article 3181 provides:
If a person appointed or confirmed as succession representative fails to qualify for the office within ten days after his appointment or confirmation, on its own motion or on motion of any interested person, the court may revoke the appointment or confirmation, and appoint another qualified person to the office forthwith.
The delay allowed herein for qualification may be extended by the court for good cause shown.

Louisiana Code of Civil Procedure article 3942 provides:
A. An appeal from a judgment granting or refusing an annulment of marriage or a divorce can be taken only within thirty days from the applicable date provided in Article 2087(A).
B. Such an appeal shall suspend the execution of the judgment insofar as the judgment relates to the annulment, divorce, or any partition of community property or settlement of claims arising from the matrimonial regime.

Ms. Buhler also contends that the prior February 7, 1994 judgment of divorce was also absolutely null. Ms. Buhler has not shown why this is relevant nor can we see any significance under the facts herein given that the parties subsequently remarried.

The stipulation included: the entire suit record in the family court proceedings; the entire suit record in the succession proceeding; Mr. Buhler's original and amended death certificates; and affidavits of Ms. Buhler, Ms. Paul, and Mark Buhler, Jr. as to use of estate funds.